[No. 18161-8-III.    Division Three.    May 2, 2000.]

ALL STAR GAS, INC., OF WASHINGTON, *Appellant*, v. RANDY BECHARD, ET AL., *Defendants*, RICK BECHARD, ET AL., *Respondents*.

*Blaine G. Gibson* of *Talbott, Simpson, Gibson & Davis, P.S.*, for appellant.

*Walter G. Meyer, Jr.* and *Jeffrey M. Kreutz* of *Meyer, Fluegge & Tenney*, for respondents.

KATO, J. — All Star Gas, Inc., of Washington, obtained an injunction against Randy Bechard, its former employee, and his partnership, Yakima Energy Systems (YES). Randy's brother, Rick Bechard, was the other partner in YES. All Star Gas then filed a complaint against Rick, alleging he violated the injunction and conspired with Randy to violate a noncompetition agreement and the injunction. On summary judgment, the court determined Rick was not bound by the injunction. After a bench trial, it further concluded there was no conspiracy. The court awarded attorney fees to Rick for defending himself on the injunction claim. Claiming these rulings were error, All Star Gas appeals. Because material facts exist as to whether Rick was bound by the injunction, we reverse the order of summary judgment and the award of attorney fees. The court's decision on the conspiracy claims are affirmed.

All Star Gas is a Washington corporation engaged in the business of selling propane and related products and services. Randy worked for All Star as a retail manager. His written contract contained a noncompetition agreement prohibiting him from "directly or indirectly, by himself or through others, competing with All Star for a period of three years from the termination of his employment with All Star." He was also prohibited from using or divulging confidential business information, including the identity of All Star customers and their needs for propane. On August 19, 1994, Randy resigned.

In June 1994, Randy and Rick had formed YES, a partnership engaged in the business of selling propane and

related products and services. Randy used business information he obtained from his position with All Star in forming YES, a direct competitor of All Star Gas.

In November 1994, All Star sought an injunction against Randy and YES because Randy had breached the noncompetition agreement. On December 16, 1994, a temporary restraining order was issued prohibiting Randy and YES from "soliciting or servicing" All Stars' customers.

In January 1995, a bench trial was held before Judge Stephen M. Brown. On January 12, 1996, Judge Brown entered findings of fact and conclusions of law which, among other things, found that All Star's business sales had suffered and would continue to suffer as a result of competition from Randy and YES unless enjoined. On January 26, 1996, Judge Brown issued a final injunction:

> [E]ffective January 20, 1995, Randy Bechard and Linda Bechard, husband and wife, d/b/a Yakima Energy Systems, as that entity existed on January 20, 1995, are enjoined from, directly or indirectly, by themselves or through others, soliciting, diverting, taking away, delivering to, selling, servicing, or otherwise dealing with any people or entities who were customers of [All Star] between August 19, 1992, and August 19, 1994.

The injunction was to remain in effect until August 19, 1996.

In February 1995, Randy and Linda Bechard sold their one-half interest in YES to Rick for $60,000. Randy notified the court of the sale prior to the issuance of its written findings and conclusions.

In April 1996, All Star filed a complaint alleging that both Randy and Rick had violated the final injunction and conspired to violate both the noncompetition agreement and the injunction. Judge Michael W. Leavitt found by summary judgment that Rick had not violated the injunction because it did not bind him.

A three-day bench trial followed in which the court

considered All Star's claims.[1] It found All Star failed to prove that Rick had conspired with Randy to violate the noncompetition agreement or the injunction. The court then awarded Rick $11,154.11 in attorney fees and costs incurred for defending himself on the injunction claim. This appeal follows.

■ All Star first contests the court's summary judgment order which found Rick was not bound by the final injunction. We review orders of summary judgment de novo. *Hudson v. City of Wenatchee*, 94 Wn. App. 990, 994, 974 P.2d 342 (1999). "Conducting the same inquiry as the lower court, we view all the facts and their reasonable inferences in the light most favorable to the nonmoving party." *Id.* "Summary judgment may be granted only if the pleadings, depositions, and admissions on file demonstrate there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law." *Id.* (citing CR 56(c)). "Summary judgment is appropriate if reasonable persons could reach but one conclusion from all the evidence." *Id.*

CR 65(d) sets forth the form and scope of an injunction. An injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." CR 65(d). The question here is whether Rick Bechard, not a party to the original action and unnamed in the injunction, should be bound by it.

■ Washington case law neither addresses the precise issue presented nor does it provide a test for making the required determination.[2] But Federal Rule of Civil Procedure 65(d) is identical to CR 65(d) so cases interpreting the

---

[1]The court also considered the claims regarding Randy's violation of the injunction. It determined that he did violate the injunction and consequently awarded All Star $21,000 in damages.

[2]All Star relies on two Washington cases to support its argument Rick was bound by the injunction as a matter of law. *R/L Assocs., Inc. v. City of Seattle*, 113

federal rule can be used for guidance. *See American Discount Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972).

■ Under federal law, an injunction binds only nonparties who are " 'so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding.' " *Harris County v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 314 (5th Cir. 1999) (quoting 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2956, at 340-41 (1995)). In *G.&C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29 (1st Cir. 1980), the court considered the issue whether an individual is so legally identified with a party as to bind him by an injunction in which he is not named. The case involved a closely-held corporation operating out of the adjacent apartments of two brothers. *Id.* at 32-33. Only one of the two brothers and the corporation were named in an injunction. In determining whether the nonparty brother was bound, the court noted his responsibilities in the corporation were substantial and he was a principal actor with respect to the activities that were the occasion for invoking the injunction. *Id.* at 38. However, the court found

> [t]he evidence raises a fact issue as to whether this is a case of the same person continuing to do essentially the same thing with the same high degree of practical control, discretion and responsibility, before and after the injunction, with knowledge of the injunction, and after participating in the enjoined firm's corporate decisionmaking regarding its position in the injunction proceedings.

*Id.* It remanded for additional fact finding on this issue, primarily because the record was sparse with respect to the

Wn.2d 402, 780 P.2d 838 (1989), and *Bennion v. Pronto Foods, Inc.*, 2 Wn. App. 621, 469 P.2d 208, *review denied*, 78 Wn.2d 993 (1970). Both are distinguishable because in each case the individual sought to be bound by the injunction was named, at least by title, in the injunction. Moreover, federal case law has established a specific test for determining whether a nonparty should be bound by an injunction. Neither of the cases relied on by All Star discusses the federal test, which we find is the proper method to resolve this issue.

nonparty's participation in the injunction proceeding. *Id.* at 39-40.

Here, Rick had substantial responsibilities at YES and was a principal actor in contacting former customers of All Star, the actions which precipitated the injunction. He also conceded he had knowledge of the injunction. But it is not entirely clear what his level of participation was with respect to the injunction proceedings. *Merriam*, 639 F.2d at 39-40. This raises a question of fact as to whether he was "legally identified" with YES in the sense of his having had his day in court on the injunction's validity and thus bound by the injunction even though he was not a party. The court erred by deciding on summary judgment that Rick was not bound.

Moreover, a person may be legally identified with a party by virtue of being a "successor or assign." *Id.* at 36. In dicta, the First Circuit indicated a successor may be an instrumentality through which an enjoined party seeks to evade an order. *Id.* The court did not consider whether such facts were present in its case, but noted that if there were a finding that a successor was such an instrumentality, the successor might be within the permissible scope of a contempt proceeding. The successor must also have received a transfer of the business or some part of it from the enjoined party. *Id.*

Rick was undoubtedly a successor to Randy in YES. Immediately after the injunction was issued, Randy transferred his entire interest in YES to Rick. The record, however, does not indicate whether the sale was a vehicle to evade the injunction. Again, a question of fact precludes summary judgment.

When ruling on the summary judgment motion, the trial court determined as a matter of law Judge Brown's intent in issuing the injunction. But the issuing judge's intent is not the appropriate test for determining who is bound by an injunction. We thus remand with instructions to the trial court to reconsider this issue in light of the federal test.

All Star further contends the court erred by awarding Rick attorney fees associated with defending himself against its claim that he violated the injunction. "Washington courts traditionally follow the American rule in not awarding attorney fees as costs absent a contract, statute, or recognized equitable exception." *City of Seattle v. McCready*, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997). One exception to this rule is the dissolution of an injunction when wrongfully issued. *Id.* at 274.

█ "[A]ttorney fees are recoverable in an action [when] a trial on the merits has for its sole purpose the determination of whether an injunction should be dissolved, the injunction is dissolved, and a trial was the sole procedure available to the party attempting to dissolve the temporary injunction." *Id.* at 277 (citing *Cecil v. Dominy*, 69 Wn.2d 289, 293, 418 P.2d 233 (1966)). "If dissolving the injunction is not the sole purpose of the trial, then attorney fees are available only for services performed in dissolving the temporary injunction." *Id.* The rationale supporting this exception is that the party enjoined may have no choice but to litigate. *Id.* at 277-78. Although *McCready* addressed attorney fees for dissolving a temporary injunction, the rule should apply as well to this action based on a final injunction because the rationale supporting the exception remains the same.

Claiming in part that he violated the final injunction, All Star sued Rick. Rick's only recourse was to defend himself on the basis that he was not bound by the injunction. All Star argues he was not entitled to fees because the action did not dissolve the injunction. When no motion is made for a dissolution of an injunction nor any attack upon the merits of the injunction itself, attorney fees cannot be recovered. *Mann v. Becker*, 90 Wash. 534, 538, 156 P. 396 (1916). Rick did attack the merits of the injunction as it applied to him. He thus was entitled to his attorney fees associated with defending himself on this claim. But because we reverse the summary judgment order that he was not bound by the injunction, he has yet to prevail on this issue and the award of fees was premature.

■■ Finally, All Star claims the court erred by concluding Rick did not conspire to violate the injunction or noncompetition agreement. The court entered findings of fact and conclusions of law on these issues. Consideration of the challenged findings and conclusions is limited to whether there is sufficient evidence to support the findings and whether the findings support the trial court's conclusions of law. *Professionals 100 v. Prestige Realty, Inc.*, 80 Wn. App. 833, 841, 911 P.2d 1358 (1996). Because neither party has assigned error to any of the findings of fact, they are verities on appeal. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). Our review is thus limited to determining if the findings entered by the trial court support its conclusions of law.[3]

■■ To establish a civil conspiracy, All Star must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. *Wilson v. State*, 84 Wn. App. 332, 350-51, 929 P.2d 448 (1996), *cert. denied*, 522 U.S. 949 (1997). "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." *Id.* "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." *Lewis Pac. Dairymen's Ass'n v. Turner*, 50 Wn.2d 762, 772, 314 P.2d 625 (1957).

The court's findings of fact support its conclusion that Rick did not conspire to violate the noncompetition agree-

---

[3]Rick argues this issue is not properly before the court because All Star did not assign any error to the trial court's findings and conclusions. All Star did not specifically assign error to any particular finding of fact or conclusion of law. But it is clear from the brief what conclusions it contends are error. We can thus consider this issue. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) (appellate court may exercise its discretion to consider the merits of an issue despite a technical flaw with the appellant's compliance with the Rules of Appellate Procedure).

ment.[4] He did not have actual or constructive knowledge of this agreement until November 1994, when All Star commenced the lawsuit against Randy. Rick could not have conspired with Randy to violate an agreement that he did not know existed until after the alleged conspiracy had occurred. Nothing in the record suggests Rick had an unlawful motive or used unlawful means when he agreed to form YES with Randy. There is also no evidence of any agreement between Randy and Rick to conspire. All Star failed to show by clear, cogent, and convincing evidence a conspiracy to violate the noncompetition agreement.

All Star relies on *Sterling Business Forms, Inc. v. Thorpe*, 82 Wn. App. 446, 918 P.2d 531 (1996), *review denied*, 130 Wn.2d 1026 (1997), to support its claim that the trial court should have determined the brothers conspired. But *Sterling* held there were questions of fact precluding summary judgment. *Id.* at 454. Thus, a trial court is merely required to consider if questions of fact exist. Here, the trial court did consider the issue, and its conclusion there was no conspiracy is supported by the findings.

All Star also argues the court erred by concluding Rick did not conspire with Randy to violate the injunction. All Star claims that because Rick bought Randy's interest in YES after the injunction was issued, a conspiracy was established. It relies on *Dairymen's Association*, 50 Wn.2d 762, to support this argument. There was evidence in *Dairymen's Association* the enjoined party had transferred his interest in the enjoined business to his son. *Id.* at 768. There was also some evidence the father and son had an agreement to conspire. *Id.* at 774. But unlike *Dairymen's Association*, All Star presented no facts or evidence showing Rick and Randy agreed to violate the injunction simply by transferring Randy's interest in YES to Rick. The

---

[4]Rick claims that because the court entered a finding of fact stating he did not conspire with Randy, there is nothing for this court to review. The finding that Rick did not conspire with Randy is actually a conclusion of law and subject to our review. *See Woodruff v. McClellan*, 95 Wn.2d 394, 396, 622 P.2d 1268 (1980); *Local Union 1296, Int'l Ass'n of Firefighters v. City of Kennewick*, 86 Wn.2d 156, 162, 542 P.2d 1252 (1975).

transfer alone is insufficient to establish a conspiracy to violate the injunction by clear, cogent, and convincing evidence.[5]

All Star also contends Rick's rehiring of Randy, after the injunction was issued but before it expired, constituted a conspiracy. Rick rehired Randy to work at YES in September 1995. Rick testified Randy's work for YES did not involve contact with any customers. Randy testified he did contact former All Star customers, but on his own, and not as an employee of YES. The court found Randy's actions violated the injunction after September 1995. However, there is no evidence Rick was aware of or agreed Randy could do such work on behalf of YES. This does not establish an agreement between Rick and Randy to violate the injunction. The court did not err by concluding there was no conspiracy.

Rick has requested an award of attorney fees on appeal. However, he has not prevailed on the injunction issue and an award of fees is not appropriate. His request is denied.

The order of summary judgment and the award of fees are reversed. The court's decision finding no conspiracy is affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

---

[5]As indicated in the first issue, there is a question of fact whether Randy sold Rick his interest in YES to evade the injunction. If Randy did, Rick could be bound by the injunction. But even if on remand the trial court finds this was the case, the issue will not be affected. In order to prevail on a claim of conspiracy, All Star was required to present clear, cogent, and convincing evidence of an agreement between Randy and Rick to violate the injunction. It failed to do so. The court's conclusion on the conspiracy issue was therefore proper.